## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

Walid El-Baz Abdelwahab
Alice Abdelwahab

Plaintiffs


v.



Denise Frazier, District Director,
Citizenship & Immigration Services;
Eduardo Aguirre, Director,
Citizenship & Immigration Services
Michael Chertoff, Secretary,
Department of Homeland Security;
Alberto Gonzales, United States
Attorney General

Defendants

Court File No. _____



**COMPLAINT FOR
DECLARATORY REVIEW OF
VISA PETITION DENIAL AND
ILLEGAL REVOCATION OF
IMMIGRANT VISA
APPROVAL BY CIS DISTRICT
DIRECTOR**

## I. INTRODUCTION

Plaintiffs, by and through their undersigned counsel, seeking declaratory relief

against Defendants, state as follows:

1)        This is an individual action for declaratory review, authorized by the

Declaratory Judgment Act, 28 U.S.C. Section 2201, and the Administrative

Procedure Act, 5 U.S.C. Section 701 *et seq*. This action challenges the arbitrary,

capricious and unlawful actions of Defendants in refusing to grant the spousal

#109590

immigrant visa petition of United States citizen Alice Abdelwahab filed on behalf

of her husband of eight and a half years, Mr. Walid Abdelwahab pursuant to

section 201(b) of the Immigration and Nationality Act ("INA"), and for unlawfully

revoking a properly approved employment-based immigrant visa petition.

2)        Plaintiffs seek declaratory and injunctive relief against Defendants for their

unlawful policies, practices, erroneous interpretations of law, and failures to

administer properly the Immigration and Nationality Act, 8 U.S.C. § 1101 *et. seq.*

and applicable regulations.

## II. JURISDICTION

3)        This Court has subject matter jurisdiction over the present action pursuant

to the Constitution; 28 U.S.C. § 1331, Federal Question Jurisdiction; 28 U.S.C. §

2201 et. seq., the Declaratory Judgment Act; 5 U.S.C. § 702, the Administrative

Procedures Act; 28 U.S.C. § 1361, regarding an action to compel an officer of the

United States to perform his duty; and 8 U.S.C. § 1329, of the Immigration and

Nationality Act of 1952, providing for jurisdiction of this Court over actions

arising under said Act; 5 USC §704 (review of final agency action); and 28 U.S.C

§2202 (further relief).

4)        There are no administrative remedies available to plaintiffs to redress the

grievances described herein.

#109590

## III. VENUE

5)    28 U.S.C. § 1391(e), as amended, provides that in a civil action in which each defendant is an officer or employee of the United States or any agency thereof acting in his official capacity, or under color of legal authority, or any agency of the United States, the action may be brought in any judicial district in which a defendant in the action resides. Plaintiffs, Mrs. Alice Abdelwahab (Alice or Mrs. Abdelwahab) and Mr. Walid Abdelwahab (Walid or Mr. Abdelwahab), are residents of the District of Minnesota, and Defendant Citizenship and Immigration Services (CIS) is an agency that operates within this district; furthermore, many of the regrettable events, omissions and oppressive actions of the agency giving rise to the instant claim occurred in this judicial district.

## IV. EXHAUSTION

6)    The Abdelwahabs have exhausted their administrative remedies, and their only remedy is by way of this judicial action. Exhaustion is not required when it would be futile.

7)    In addition, exhaustion is not required when a constitutional question is raised. The Abdelwahabs are challenging the constitutionality of INA § 204(c), 8 U.S.C. § 1154(c), as applied in their case, because there are insufficient facts to justify a 204(c) denial and because Defendants' conduct in revoking the approved petition deprived them of due process and equal protection of the law.

#109590

8)      The United States Court of Appeals for the Eighth Circuit dismissed Mr. Abdelwahab's Petition for Review challenging CIS's actions for lack of jurisdiction on March 23, 2006.

## V. PLAINTIFFS

9)      Plaintiffs Mrs. Alice Abdelwahab and Mr. Walid Abdelwahab (a.k.a. Walid El Baz) are residents of Minneapolis, Minnesota.  They are the Petitioner and Beneficiary respectively of a Spousal Petition filed pursuant to section 201(b) of the Immigration and Nationality Act, seeking to classify Mr. Abdelwahab as an immediate relative of a United States citizen.  Mr. and Mrs. Abdelwahab married over eight years ago in November 1997, and applied to Citizenship and Immigration Services for an immigrant visa.  As the spouse of a United States citizen, plaintiff Mr. Abdelwahab is immediately eligible for an immigrant visa. Both Mr. and Mrs. Abdelwahab are persons of good moral character and both are upstanding members of the community in which they live.

## VI. DEFENDANTS

10)     Defendant Alberto Gonzales is the duly appointed Attorney General of the United States of America.  He is charged with the administration and enforcement of the immigration laws.  8 U.S.C. § 1103(a).  He is sued in his official capacity. Defendant Michael Chertoff is the duly appointed Secretary of the Department of Homeland Security (DHS), a federal agency. Defendant Eduardo Aguirre is the duly appointed Director of Citizenship and Immigration Services, a federal agency within DHS.  He is charged with any and all responsibilities and authority in the

4

#109590

administration of the CIS as have been delegated or prescribed by the Attorney General.  He is sued in his official capacity.  Defendant Denise Frazier is the duly appointed District Director of the St. Paul District Office of Citizenship and Immigration Services, who has unlawfully refused to approve the instant Application for Immigrant Visa, pursuant to INA § 201(b) and unlawfully revoked a properly approved I-140 immigrant worker petition.

## VII. PRELIMINARY STATEMENT

11)      This action, wherein United States citizen Alice Abdelwahab seeks an immigrant visa for her husband of eight and a half years - Walid Abdelwahab- for legal permanent residency, involves the CIS's arbitrary and capricious abuse of power in failing to adjudicate even-handedly Alice Abdelwahab's immigrant visa petition. The Abdelwahabs have yet to have their petition adjudicated by an impartial, fair-minded officer, despite the passage of over eight and a half years.

12)      Moreover, DHS engaged in an unlawful and mean-spirited after-the-fact revocation of the I-140 Immigrant Visa Petition for Alien Worker, upon which Mr. Abdelwahab's 's adjustment of status was predicated.  DHS improperly used INA § 204(c) to revoke the I-140 petition approval.

13)      The DHS' conduct in appealing the adjustment of status duly and lawfully granted by the Immigration Judge (IJ), the unlawful route by which it sought to and revoked the approved I-140, and moving the Board of Immigration Appeals (BIA) to remand based on that unlawful revocation, are all reprehensible.

#109590

14)      The Immigration Judge, over a period of approximately one and one-half years, gave the DHS approximately four continuances to forward the crucial record in question (Form I-130 Spousal Visa Petition and Form I-485 denied by CIS District Director pursuant to § 204(c) ) to the BIA for consideration prior to the merits hearing on the adjustment application, but the Service was quite lackadaisical in this regard.  The misbehavior of the DHS in this matter cannot be substantially justified.

## VIII. FACTUAL BACKGROUND

15)      Mr. Abdelwahab entered the United States in 1997 on a visitor's visa.

16)      Subsequently, Mr. Abdelwahab fell in love with U.S. citizen Alice Abdelwahab, whom he has known since July 1997.  In November 1997, they married and they remain married to this day.

17)      On January 26, 1998, Alice filed a marriage-based immigrant visa petition (referred to as Form I-130).

18)      On September 23, 1998, CIS conducted a marriage interview of the couple.

19)      On June 1, 2001, CIS issued a Request for Evidence (RFE) to the couple asking for the birth certificates of "all your children (petitioner and beneficiary)," and various other items.

20)      The couple responded to the RFE on August 3, 2001.

6

21)     On October 5, 2001, Mr. and Mrs. Abdelwahab submitted additional documentation establishing the bona fide nature of their marital union. That evidence included the affidavit of Mr. Larry Ronning who was the caretaker of the building where Mr. and Mrs. Abdelwahab resided.

22)     On February 21, 2002, CIS conducted a bed check of the couple.

23)     On March 5, 2002, CIS issued a notice of intent to deny (NOID) the I-130.[1] In that Notice of Intent to Deny dated March 5, 2002, the District Adjudications Officer admitted that she was "unable to clearly establish marriage fraud..."[2]

24)     On April 8, 2002, the Abdelwahabs responded to the NOID, supplying affidavits, letters and additional evidence of bona fides of their marriage.

25)     On August 16, 2002, CIS denied the marriage petition that Alice had filed on behalf of her husband.

26)     On September 3, 2002, Mr. and Mrs. Abdelwahab filed a notice of appeal on Form EOIR-29 to the BIA of the decision of the district director, through the local CIS office, as is the correct procedure. One part of the form states: "Specify reasons for this appeal and continue on separate sheets if necessary." Owing to the complexity of the issues and procedural history, undersigned counsel noted on the

---

[1] *See* Exhibit 1 – CIS's Notice of Intent to Deny, dated March 5, 2002.
[2] *Id*. at 1.

#109590

form: "See attached statement" and then provided six single-spaced pages of legal

analysis as to the basis of the appeal.[3]

27)     In April 2003, Immigration and Customs Enforcement (ICE) started

removal proceedings against Mr. Abdelwahab .

28)     On July 8, 2003, an American company, Sky Café, needed Mr.

Abdelwahab's services and decided to sponsor him for a green card by filing an

employment-based immigrant visa petition on his behalf.[4]

29)     On September 15, 2003, Mrs. Abdelwahab filed a second Form I-130

spousal immigrant visa petition with the Nebraska Service Center on behalf her

husband Mr. Walid Abdelwahab. That I-130 petition contained, *inter alia,* the

following evidence:

- ❑ Mr. and Mrs. Abdelwahab's marriage certificate, dated November 6, 1997 (eight years ago).
- ❑ Affidavit of United States citizen Roberta Morrison ~ mother of Mrs. Abdelwahab detailing how the couple met.
- ❑ Affidavit of Swiss citizen Tanya Luthodl discussing Walid's love for Alice.
- ❑ Affidavit of Michael Nesseth.
- ❑ Thirty photographs of Walid and Alice together, including photographs of Walid with Alice's family, children, and their marriage ceremony.
- ❑ Joint phone bill, birthday card from Walid to Alice dated 1999, birthday card from Alice to Walid dated 1998, joint credit card, joint Blockbuster

---

[3] *See* Exhibit 2 –September 3, 2002 cover letter,  Notice of Appeal, and April 12, 2001 letter/memorandum.

[4] This immigrant visa application is often referred to as a Form I-140 petition and forms the first step in securing lawful permanent residency predicated on employment  (a.k.a. a green card).

#109590

card, joint residential lease, receipt for Alice and Walid's flight to Florida in August 2000.

❑ Joint Quest bill, joint IRS statement, joint State of Minnesota Income Tax refund, joint NSP bills, joint phone bills, joint US Bank statement, notarized letter from Mr. Solomon dated June 23, 2000 that Mr. and Mrs. Abdelwahab are "happily married and they appear by all accounts to be cheerful and content."

❑ Notarized letter from Mr. Hamed dated August 22, 2000, stating that he has known the couple since they have been married ~ "they share a home as well as a life together."

❑ Notarized letter from Mr. Logsdon dated June 26, 2000 saying that he goes out for dinner and movies with the couple.

❑ Notarized statement from Mrs. Moreno dated August 2, 2000 stating that she has known the couple since March 1998 and that they are an extremely nice couple who work well together.

❑ Notarized letter from Nancy Moreno dated August 2, 2000 saying that she has known the couple for over two and one-half years.

❑ Notarized letter from apartment building manager Mr. Foley dated June 15, 2000, attesting to the couple being friendy and that he sees them almost everyday.

❑ Notarized statement from Ms. Smith dated June 14, 2000 stating the she has know the couple since June 1998 and that they are a happy couple.

❑ IRS Form 4865 containing both their names.

❑ Minnesota Department of Revenue Form M-13 with both their names. Federal Income Tax return dated 1998 containing both their names.

❑ Medical insurance application listing both Mr. and Mrs. Abdelwahab.

❑ Check containing the names of both Mr. and Mrs. Abdelwahab.

30)     On September 17, 2003, the couple filed with the BIA a motion to remand the pending appeal on the I-130 to the CIS to consider additional, new evidence showing the bona fides of their marriage.

#109590

31)      On October 1, 2003, the BIA notified undersigned counsel that "the appeal in this case has not been received by the BIA."[5]

32)      On January 29, 2004, the CIS approved Mr. Abdelwahab's's I-140 (employment) petition, rendering him eligible to obtain permanent resident status from an Immigration Judge.

33)      On February 24, 2004, Mr. Abdelwahab filed a Form I-485, application for adjustment of status.

34)      On July 8, 2004, one day before his final adjustment hearing after several continuances were granted to CIS by the IJ to forward the I-130 Record of Proceedings to the BIA, CIS scrambled and unlawfully issued a Notice of Intent to revoke the I-140 petition approval[6] without following its own procedures based on a ludicrous belated finding by CIS that the Abdelwahabs (at that time) seven year marriage was fraudulent.

35)      On July 8, 2004, DHS also filed yet another motion to continue proceedings because "a notice of intent to revoke the approval of the form I-140 petition will be served **upon respondent**."[7] The Immigration Judge voiced his concern with the multiple continuances requested by ICE and declined to continue the case.

36)      On July 9, 2004, Mr. Abdelwahab appeared before an Immigration Judge and following a full hearing on the merits, the IJ granted Mr. Abdelwahab

---

[5] *See* Exhibit 3 – BIA letter, dated October 1, 2003.
[6] *See* Exhibit 4 – CIS Notice of Intent to Revoke I-140 Approval, dated July 8, 2004.
[7] *See* Exhibit 5 – DHS motion, dated July 8, 2004 (emphasis supplied).

permanent resident status based on the approved employment-based immigrant visa petition.

37)     That same day, on July 9, 2004, DHS appealed the IJ's grant of adjustment to the BIA.

38)     On August 19, 2004, the BIA summarily, and erroneously, dismissed the couple's appeal of the I-130 denial because "no reasons for the appeal have been identified on the Notice of Appeal or any other paper filed with it."[8]

39)     On August 30, 2004, responding to the BIA's erroneous summary dismissal, DHS filed a motion to reopen with the BIA in which it affirmed that undersigned counsel had indeed submitted reasons for the appeal. The DHS motion concluded: "[t]ogether this documentation indicates the reasons for respondent's appeal."[9]

40)     On September 3, 2004, CIS revoked the I-140 petition, because it "is barred by section 204(c) of the Act."[10]

41)     That same day, September 3, 2004, CIS also issued a transfer notice, transferring Alice's second I-130 immigrant visa petition from the Nebraska Service Center to the California Service Center.

---

[8] *See* Exhibit 6 – BIA decision, dated August 19, 2004.
[9] *See* Exhibit 7 – DHS motion to reopen, dated August 30, 2004.
[10] *See* Exhibit 8 – CIS letter, dated September 3, 2004.

#109590

42)      On September 29, 2004, Mr. Abdelwahab and his employer Sky Café filed

an appeal to the AAO challenging the illegal revocation of the I-140, Immigrant

Petition for Alien Worker.

43)      That same day - on September 29, 2004, DHS moved the BIA for a remand

based upon the revocation of Form I-140, Immigrant Petition for Alien Worker.

44)      On October 6, 2004, CIS scheduled an interview of Mr. and Mrs.

Abdelwahab on their second I-130 petition for October 27, 2004. The couple did

not attend and notified the CIS that they will not attend the interview because the

IJ had already granted adjustment of status to Mr. Abdelwahab.

45)      On October 13, 2004, Mr. Abdelwahab filed an opposition to the DHS's

motion for remand based upon the unlawful revocation of the Form I-140,

Immigrant Petition for Alien Worker.

46)      In a November 12, 2004 letter, CIS denied the second I-130 petition

because Mrs. Abdelwahab did not appear for the October 27, 2004 interview of

that petition.

47)      On April 25, 2005, DHS submitted its one-page appeal brief to the BIA.

48)      On May 5, 2005, DHS filed a supplemental memorandum in support of

their appeal of the IJ's grant of adjustment.

49)      On May 27, 2005, Mr. Abdelwahab filed a Reply Brief in response to

DHS's appeal of the IJ's grant of adjustment.

12

50)      On September 20, 2005, the BIA issued a decision vacating the IJ's grant of

adjustment of status and remanding to the IJ, *inter alia* "to allow for consideration

of any additional available relief, including voluntary departure."[11]

51)      On October 13, 2005 Mr. Abdelwahab appealed that decision to the U.S.

Court of Appeals for the Eighth Circuit, which dismissed the Petition for Review

due to lack of jurisdiction on March 23, 2006.

## IX. RELEVANT STATUTORY AND REGULATORY BACKGROUND

### MARRIAGE-BASED IMMIGRANT VISA PETITIONS

52)      Under INA §§ 201 (b) and 245, *et seq.,* 8 U.S.C. Section 1255*, et seq*.,

United States citizens ("USC") and legal permanent resident ("LPR") may apply

for an immigrant visa for their non-citizen spouses.  The process whereby a non-

citizen spouse of a United States citizen becomes a lawful permanent resident

involves two parts.

53)      First, the USC spouse petitions the CIS on Form I-130 to classify their non-

citizen spouse as an "immediate relative." If the necessary family relationship

exists, the CIS must approve the petition. 8 CFR §204.1(a)(1). CIS approval of an

alien relative petition does not grant the beneficiary authorization to live and work

in the United States. It merely serves as the basis upon which an alien can submit

an application for permanent resident status either in the United States or abroad.

---

[11] *See* Exhibit 9 – BIA decision, dated September 20, 2005.

#109590

54)     Upon approval, once the USC spouse establishes that they are petitioning for an immediate relative as that term is defined in INA § 201(b)(2)(A)(i), 8 U.S.C. § 1151(b)(2)(A)(i), the status of that non-citizen may be adjusted to that of an alien lawfully admitted for permanent residence.  Using Form I-485, the alien makes an application for such adjustment, if eligible to receive an immigrant visa and is admissible to the United States for permanent residence. INA § 245(a)(1)-(3), 8 U.S.C. § 1255(a)(1)-(3).

55)     Because there is a statutory presumption that all marriages between a USC or LPR and a non-citizen are fraudulent, the parties must establish that a *bona fide* marriage exists. INA §237(a)(1)(G)(i), 8 U.S.C. §1227(a)(1)(G)(i). In addition to evidence of United States citizenship or lawful permanent residence, the petitioner must also provide evidence of the claimed relationship. 8 C.F.R.§ 204.2(a)(2).

56)     To avoid deportation, the foreign national must prove that the marriage was not entered into for the purpose of evading any provision of the immigration laws.

57)     Lawful permanent resident status confers many advantages.  As the name denotes, LPRs have the privilege of residing and working permanently in the United States.  INA § 101(a)(20), 8 U.S.C. § 1101(a)(20).  They may travel outside the United States freely and are readmitted to the United States automatically.  INA § 101(a)(13)(C), 8 U.S.C. § 1101 (a)(13)(C).  LPRs may retain their LPR status for the rest of their lives or, after three years, they may

14

apply to naturalize, that is, to become a United States citizen.  INA § 316(a), 8 U.S.C. § 1427(a).

58)     Citizenship bestows many benefits over LPR status: United States citizens may vote, travel freely, hold a United States passport, cannot be deported, and may petition for family members, such as elderly parents, to immigrate to the United States utilizing the immediate family member classification.   INA § 201(b)(2)(A)(i), 8 U.S.C. § 1151(b)(2)(A)(i).

59)     Under the applicable legal authorities, Defendants must consider the conduct of the parties before and after the marriage to determine the *bona fides* of the marriage.  The conduct of the parties *before* and *after* the marriage is relevant to determining the intent of the parties at the time of the marriage.

60)     CIS must also consider prior BIA precedent, pursuant to 8 C.F.R. §3.1(g), which reads as follows:

> (g) Decisions of the BIA as precedents. Except as they may be modified or overruled by the BIA or the Attorney General, decisions of the BIA **shall be binding** on all officers and employees of the Service or Immigration Judges in the administration of the Act, and selected decisions designated by the BIA shall **serve as precedents in all proceedings involving the same issue or issues.**

15

## A. STANDARDS UNDER INA § 204(C)

61)     Section 204(c) of the Immigration and Nationality Act provides:

(c) Limitation on orphan petitions approved for a single petitioner; prohibition against approval in cases of marriages entered into in order to evade immigration laws; restriction on future entry of aliens involved with marriage fraud.— Notwithstanding the provisions of subsection (b) no petition shall be approved if—

(1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws or

(2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

62)     In an INA § 204(c) case, it is settled law that the burden is on the CIS to prove by "substantial and probative evidence in the alien's file" that "the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws."[12] It is only after the government has met this initial requirement that the burden shifts to the petitioner to rebut the government's evidence and establish that the prior relationship was bona fide. There should be no doubt in regard to this legal requirement, as this has been clearly indicated in many cases.

---

[12] *Matter of Tawfik*, 20 I&N Dec. 166 (BIA 1990).

63)      *In re: Celso Jose Ramos, beneficiary of visa petition filed by Michelle*

*Marie Ramos, petitioner*, the BIA stated:

> This, however, is a §204(c) case, where the
> Government has raised a question as to the validity of
> the beneficiary's first marriage. In a §204(c) case, the
> Government **as a threshold requirement** must come
> forward with 'substantial and probative' evidence that
> a party's prior marriage was a sham, and that a later
> petition should therefore be denied[13]. Once the
> government **has met that initial requirement**, the
> burden shifts back to the petitioner, as part of his
> burden of proof in visa petition or revocation
> proceedings, to rebut the Government's evidence and
> establish that the prior marriage was bona fide, and
> that §204(c) should not apply.

64)      INA §204(c) is an extremely harsh statute, and carries a devastatingly

severe penalty: it forever prevents the approval of petitions based on bona fide

relationships. Quite properly, the BIA has repeatedly established that such a

severe penalty should not be imposed lightly, and has repeatedly stressed that

the CIS bears a very high burden of proof to substantiate a §204(c) denial. The

BIA has repeatedly held that even cases with extremely strong adverse

evidence, clearly supporting a reasonable inference of fraud, are not appropriate

for a §204(c) denial.[14]

65)      Although the BIA has not precisely defined "substantial and probative

evidence," the multitude of BIA decisions should certainly provide clear

---

[13] *See Matter of Agdinaoay*, 16 I&N Dec. 545 (BIA 1978).
[14] *Matter of Tawfik*, 20 I&N. Dec. 166 (BIA 1990).

#109590

guidance in regard to weighing the facts of a particular case to determine whether the CIS has met its burden. Thus, the question in this case is whether the Abdelwahab's file contains *evidence that is more* substantial and more probative than the evidence in BIA cases where §204(c) was found to be inappropriate, to justify their revoking the approved I-140, Immigrant Petition for Alien Worker.

66)      The CIS should have a thorough knowledge of the precedent BIA decisions regarding §204(c) when evaluating whether a case being adjudicated may fall under INA §204 (c).

67)      In *Matter of Tawfik,* the foreign national divorced his Egyptian wife, married the petitioner, and applied to CIS for benefits based on this marriage. It was "uncontested that while the case was pending in court, the petitioner and beneficiary lived in different cities at the time of the denial" and "that at the same time, the beneficiary was living with his first wife, a citizen of Egypt." The petition was denied by the District Director on January 30, 1987, based on a finding that the marriage was entered into for the primary purpose of obtaining immigration benefits for the beneficiary.

68)      The BIA stated that the mere fact that "the Petitioner was living separately from the Beneficiary is not evidence of an attempt or conspiracy on the Beneficiary's part to enter into a marriage for the purpose of evading the immigration laws." The BIA went on to state that "the conclusion of the District Director that the Beneficiary was living with his former wife at the

18

#109590

time of the denial" was "of itself, of no relevance to the issue of whether the Beneficiary entered into the marriage with his first United States citizen wife in an attempt to evade the immigration laws." Although the BIA did not take issue with whether the evidence was sufficient to reasonably infer that the prior marriage was a sham, the BIA clearly stated that, **"a reasonable inference does not rise to the level of substantial and probative evidence requisite to the preclusion of approval of a visa petition in accordance with 204(c) of the Act."**[15]

69)     The CIS must determine whether the facts in a pending case are more adverse than in a case where the CIS has denied a prior petition for the Beneficiary based on a reasonable inference of fraud, with absolute proof that the Petitioner and Beneficiary were living in different states, and that the Beneficiary was living with a prior alien spouse while his case was pending, as was the case in the case of *Matter of Tawfik*.

70)     In *In Re: Celso Jose Ramos*, there were even stronger adverse facts, but the BIA still found these facts to be insufficient to justify a 204(c) denial. In that case, "the couple did not live together immediately after marriage . . . and the beneficiary tried to persuade his wife to join him when he moved to California," but she "left him after six months."

---

[15] *Id*. at 168 (emphasis supplied).

#109590

71)     The government was in possession of statements of Beneficiary's

former girlfriend and Beneficiary's former wife. The syllabus of the case

provides an excellent short summary and reads as follows:

> "The Government failed to provide the required
> evidence of sham marriage **where the statements of**
> **the beneficiary's former girlfriend, claiming that**
> **he had confided his intention to enter into a sham**
> **marriage appeared to be the statements of a**
> **`wronged' woman**. Statements from the beneficiary's
> first wife, although admitting that she was `suspicious'
> of his motives, indicated that she had entered into the
> marriage based on love. She also indicated that the
> money was never discussed, and that the sum of $1000
> which the beneficiary gave her was described by him
> as a wedding present. She stated that arrangements
> for the marriage were discussed with beneficiary's
> sister and brother-in-law, not with the beneficiary,
> and that she understood the marriage was a business
> deal and would be annulled.

72)     The BIA noted that the critical question was beneficiary's intent at the

time he entered into 'the first marriage. Affidavits from beneficiary, his friends

and family, although characterized by the INS as self-serving were found to be

more convincing than those provided by the girlfriend and first wife. The BIA

held that 204(c) did not apply, sustained the appeal, and approved the visa

petition.

73)     In *Matter of Rahtnati*,[16] the Beneficiary married a U.S. citizen, and

secured permanent residency status. He and his spouse had never lived

---

[16]  16 I&N 538 (BIA 1978).

#109590

together for more than a few months at a time and in fact were not living together at the time of adjustment of status. The beneficiary's permanent residency status was rescinded on the basis that the marriage was no longer viable at the time of securing his permanent visa. In the subsequent visa petition proceedings, the BIA found that these facts were not sufficient to allow the Service to deny on the basis of §204(c).

74)     In *In re; Efrain Gomez-Loza*, the BIA emphasized that the standard for "substantial and probative evidence" is an extremely high standard for the Service to meet. The Beneficiary had a short marriage to a U.S. citizen, which lasted for thirteen months. The District Director relied on evidence from a prior deportation proceeding which included letters from the alien's ex-wife and her mother, which stated that the Beneficiary's first marriage was for immigration purposes. The BIA held that "in the absence of more conclusive evidence from the Beneficiary's deportation proceedings, we do not find that the District Director's reliance on `prior proceeding' to be an adequate basis for the application for §204(c) in this case." The BIA went on to state that the record contained "photocopies from Ms. Allen and her mother in which they opined that the Beneficiary married Ms. Allen for immigration purposes." The BIA found that sharing a residence together "for about eight and a half months out of thirteen" was sufficient to undercut "Ms. Allen's claim that the Beneficiary's main purpose in marrying her was to circumvent the

immigration laws." The BIA went on to criticize the District Director for not giving the Petitioner proper opportunity to inspect and rebut this derogatory information. The BIA concluded "that the record does not contain `substantial and probative evidence' of marriage fraud which would warrant a denial in accordance with §204(c) of the Act."

75)     **In regard to what evidence might be viewed by the BIA as meeting the ˝substantial and probative˝ requirement, the cases indicate the need for a very high level of substance and probativeness to meet the §204(c) standard**.

76)     In *Matter of Rubino*,[17] both the Petitioner and Beneficiary signed statements indicating that the marriage was for the purpose of according immigration benefits to the Beneficiary (however, the appeal was sustained and the visa petition approved on other grounds).

77)     In *Matter of Anselmo*,[18] the Petitioner indicated in a sworn statement to the Service that the marriage on which the prior immediate relative visa petition had been based and granted was a fiction, had never taken place, and that she had never met nor married the man listed in the petition as her spouse (however, the BIA found 204(c) inappropriate on other grounds, and remanded the case to the District Director).

---

[17] 15 I&N 1994 (BIA I975).
[18] 16 I&N 152 (BIA 1977).

78)      In *Matter of Agbanvim*,[19] the BIA found that the Petitioner had separated from the Beneficiary in order to maintain welfare benefits, that both parties never really lived together, that the record showed them as having no credibility whatsoever, that the evidence submitted in support of the bona fide nature of their marriage had no probative value whatsoever, that the Petitioner submitted no affidavits, submitted employer letters without required information, submitted bank statements without the required information, did not produce a shred of evidence that the Beneficiary had ever contributed to the support of the Petitioner or their alleged child, and that this was despite the fact that they were represented by counsel and had been married for almost nine years. The BIA found §204(c) inapplicable on other grounds, but found that Petitioner had not yet met the burden o f p r o v i n g the bona fides of the current (same) marriage.

79)      In *Matter of Oscar Salas-Velasquez*,[20] decided by the BIA on June 25, 1993, the BIA found ample evidence that a prior marriage was entered into solely for immigration purposes. This is a case well known to the St. Paul District Office. In that case, the foreign national had married a Ms. Brady, and they both admitted during the course of a CIS interview that the marriage was not bona fide. Subsequently, during his deportation proceeding, the foreign national admitted that he had married Ms. Brady solely for immigration purposes, and that he and Ms. Brady never lived together as husband and wife.

---

[19] Index Dec. #5121.
[20] Index Dec. #5.

23

He further conceded that he had falsely represented in immigration documents filed with the Service that he and Ms. Brady were residing together. The BIA held that the evidence and testimony of Ms. Brady "established clearly and convincingly that she and the Respondent never intended to enter into a bona fide marital relationship." Her testimony was corroborated by CIS Officers, Mr. Conway and Mr. Gaede, who testified that the foreign national and Ms. Brady admitted to them that their marriage was arranged for immigration purposes. In addition, the BIA found that there was no persuasive evidence in the record that indicated that the foreign national married Ms. Brady for any purpose other than obtaining lawful permanent residence.

80)      In *Matter of Oseguera*,[21] the Beneficiary *admitted to immigration officials* that, on the advice of a notary public, she had entered into a sham marriage with a person who she believed to be Francisco Calderon-Ramirez, a lawful permanent resident of the United States, in order to facilitate her acquisition of permanent resident status.

81)      In *Matter of Agdinaoav*,[22] the BIA found that a finding of deportability under §241(c)(2) of the Act in a final order of deportation provides a clear and substantial basis for a District Director's determination that the §204(c) bar precludes the foreign national from thereafter being accorded a non-quota or visa preference status.

---

[21] 17 I&N 386 (BIA 1980).
[22] 16 I&N 545 (BIA 1978).

#109590

82)    In *Matter of Isber*,[23] the Petitioner filed an immigrant visa petition on behalf of the Beneficiary on 12-1-88, and withdrew the petition on 1-31-89, with an affidavit that stated that she married the Beneficiary as "a favor so he could get his residency," and further stated in her statement that she and the Beneficiary were living together "so that it would look good," but they had not consummated the marriage. The BIA found §204(c) was inappropriate, but found that the decision denying the visa petition was ultimately correct for failure of proof of the bona fides of the current (same) marriage.

83)    In *Matter of Kahy*,[24] the Petitioner gave a sworn statement to an investigator of the Immigration and Naturalization Service that stated that she had agreed to marry the Beneficiary in exchange for $1,000 so that the Beneficiary could remain in this country, and stated in her affidavit that she had not filed a visa petition on the Beneficiary's behalf, and that the signature on the visa petition was not hers. The forensic document analyst concluded that Ms. O'Neil did not sign the Form I-130, and that the signature was "a simulated one."

84)    In *Matter of Lazaro*,[25] the Petitioner married Beneficiary in 1977, and the Petitioner's sister married Beneficiary in 1980, without the first marriage being terminated. The Petitioner's sister then filed an immediate relative petition on

---

[23] Interim Dec. 3203 (BIA 1993).
[24] 19 I&N 803 (BIA 1988).
[25] Index Dec. #5085 (BIA 1992).

25

the behalf of the Beneficiary as the spouse of a U.S. citizen. The District Director denied the petition on the basis that the second marriage was bigamous and void, and denied the Petitioner's subsequently filed petition pursuant to §204(c) on the basis that it was inconceivable that neither Petitioner nor her sister knew that Beneficiary was married to both of them and that such knowledge constituted conspiracy to evade the immigration laws. The BIA found that the Beneficiary conspired with at least the Petitioner's sister to evade the immigration laws and that this was plain from the record.

85)     The cases detailed above indicate that the BIA has consistently found that even obviously reasonable inferences, no matter how strong, can never rise to the level of substantial and probative evidence. In addition, the BIA has consistently indicated, in cases where actual substantial evidence (such as sworn statements) was found to be sufficient, that the evidence must be extremely clear and strong to meet the "substantial and probative evidence" standard.

86)     Even if the Service was allowed to draw the most adverse inferences, that inference, even if it is "reasonable inference," is not sufficient to meet the Service's burden of substantial and probative evidence.[26] In addition, the Service should be well aware that it is expressly prohibited from presuming

---

[26] *Matter of Tawfik*, 20 I&N Dec. 166 (BIA 1990).

#109590

that the Petitioner's evidence is false, contrived, or that *any possible* adverse inference which may be drawn applies to the sequence of events.[27]

87)     The binding decisions of the BIA make it absolutely clear that the Service has an extremely high burden of proof to meet the threshold requirement for attempting to deny a petition on the basis of INA §204(c). **This burden is set extremely high for good reason, as §204(c) can serve to permanently prevent the family unification of individuals in a bona fide marital relationship**.

88)     The Service's adverse decision does not even remotely meet the standard required to meet the Service's burden of proof for denying the I-140 based upon INA § 204(c), as established by BIA precedent.

89)     The CIS's disregard of multiple BIA precedent cases and its adverse decision is in clear violation of BIA precedent. CIS has not met its legal burden of producing "substantial and probative" evidence that the Abdelwahab's marriage is not bona fide. Consequently, CIS has no legal basis, whatsoever, to attempt to destroy Mr. Abdelwahab's bona fide and multi-year marriage to Alice Abdelwahab by denying the I-130 and I-140 petitions. The adverse decisions challenged herein are **factually and legally impoverished** and violate the law.

---

[27] *Matter of Patel,* 19 I&N Dec. 774 (BIA 1988).

#109590

90)     A reviewing court will set aside an agency action that is found to be "arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with the law."[28]

## B. STANDARDS FOR REVOKING AN APPROVED IMMIGRANT VISA PETITION

91)     Revocation is permissible where there is good and sufficient cause to believe that a prior approval of a petition was not warranted.[29] However, a revocation is not effective "unless there is mailed to the petitioner's last known address a notice of the revocation **and unless notice is communicated through the Secretary of State to the beneficiary of the petition before such beneficiary commences his journey to the United States."[30]**

92)     Revocation is valid only if issued by an officer properly designated to adjudicate the petition the agency seeks to revoke. 8 C.F.R. § 205.2(a). An I-140 Petition "must be filed with the Service Center having jurisdiction over the intended place of employment."[31] Officials at the Service Centers are therefore the only appropriate authority to adjudicate and, if warranted, to revoke 1-140 petitions.

93)     Mr. Abdelwahab filed for Adjustment of Status pursuant to INA § 245(a) and (i) based on the approved I-140 by Rodham, Inc. d/b/a Sky Cafe on July 9, 2004.

---

[28] 5 U.S.C. §706(2)(A).
[29] *See* INA § 205; *see also Firstland International v. INS*, 377 F.3d 127 (2nd Cir. 2004).
[30] *Id.* (emphasis added).
[31] *See* 8 C.F.R. § 204.5(b).

#109590

94)      The revocation of the 1-140, Immigrant Petition for Alien Worker filed by
Rodham, Inc. d/b/a Sky Cafe on behalf of Mr. Abdelwahab is not a valid
revocation for a number of reasons. There are jurisdictional, procedural and
ripeness problems that preclude the revocation of the 1-140 and renders said
revocation illegal and null and void ab initio.

95)      The 1-140, Immigrant Petition for Alien Worker, filed by Rodham, Inc.
d/b/a Sky Cafe on behalf of Mr. Abdelwahab was filed with and approved by the
Nebraska Service Center (NSC). The regulation at 8 C.F.R. § 204.5 specifies that
1-140 Immigrant Worker Petitions "must be filed with the Service Center having
jurisdiction over the intended place of employment." The intended place of
employment is and has always been Minneapolis, Minnesota. According to CIS
instructions on page 3 of the 1-140 petition, where the intended place of
employment is Minnesota, the petition should be, and was, filed with the NSC.
Not only does the NSC receive the petition for filing, but it also adjudicates the 1-
140 petitions.

96)      When the former INS implemented the Immigration Act of 1990 (Pub. Law
101-649) through publication of the final rule enacting 8 C.F.R. § 204.5, one of
the major changes implemented was that 1-140 petitions were required to be filed
with the Regional Service Centers, instead of the District Offices as had been done
in the past. One of the reasons cited for the new filing location requirement was so
that "training and guidance could be concentrated at the four Service Centers." 56

29

FR 60905, Nov. 29, 1991. In 8 C.F.R. § 204.5(b), it is inherently understood that filing of 1-140 Petitions for Immigrant Workers with the Service Centers means that those same Service Centers will also adjudicate them. Since implementation of 8 C.F.R. § 204.5(b), the District Offices have been completely divested of being involved in the processing or adjudication of 1-140 Alien Worker Immigrant Visa Petitions. As such, it is both logical and consistent with 8 C.F.R. § 205.2, that the District Offices are likewise divested of the authority to initiate revocation pursuant to INA § 205.

97)      Therefore, notwithstanding the procedural problem presented by the fact that the beneficiary has always been in the United States, the St. Paul Office of USCIS was prohibited from initiating the revocation action under INA § 205 because it did not and does not have original jurisdiction over I-140 petitions.

98)      Revocation of an approved petition, while permitted under INA § 205, must be effected while the beneficiary is outside of the United States.[32] Mr. Abdelwahab entered the United States on October 17, 1997 as a visitor. He was placed in removal proceeding pursuant to INA § 240 and issued a Notice to Appear on April 21, 2003. An I-140, Immigrant Petition for Alien Worker, was filed by Rodham, Inc. d/b/a Sky Cafe on behalf of Mr. Abdelwahab on July 8, 2003 with the Nebraska Service Center and approved by the same office on January 29, 2004. Mr. Abdelwahab was clearly in the United States at the time the

---

[32] *See Firstland International v. INS,* 377 F.3d 127, 131 (2nd Cir. 2004).

#109590

I-140 was filed, approved, and for the entire time leading up to the illegal action taken by the St. Paul District Office to revoke the 1-140. Under the clear language of INA § 205 and the Federal Circuit Court's holding in *Firstland v. INS,* the revocation action initiated by the district office of USCIS was illegal, unlawful and improper.

99)      The Service, specifically the district office, "sat" or "slept" on the record in this case by repeatedly failing to forward the crucial I-130 Record of Proceedings (ROP) to the BIA in spite of repeated requests by the Immigration Judge and Petitioner, and then, in an eleventh hour maneuver decided that it had the authority to revoke a petition appropriately approved by a Regional Service Center. The rules are set forth by the Service for the benefit of and adherence by both the alien and the government. The government cannot simply ignore those rules because it does not like the result. The revocation of the I-140 petition in this case is invalid and the decision of the Nebraska Service Center approving the petition must stand.

**DEFENDANTS' ACTIONS AND FAILURES TO ACT IMPARTIALLY AND ACCORDING TO ESTABLISHED LEGAL STANDARDS HAVE HARMED THE ABDELWAHABS**

100)      Defendants have failed to consider all of the relevant evidence in denying the I-130. Moreover, their unbending approach in considering only certain snippets of evidence, its failure to weigh properly the evidence, its dogmatic adherence to legal standards that are flatly incorrect and its reliance on obsolete facts is a disservice to the fair-handed administrative review to which Mr. and Mrs. Abdelwahab are entitled.

101)    Defendants' conduct in failing to apply the correct and proper standards to the compelling facts in a reasonably timely manner is clearly negligent and has caused unnecessary and injurious delays to Mr. and Mrs. Abdelwahab in violation of their rights as alleged herein.

102)    The Abdelwahabs bring this action on behalf of themselves, as the Petitioner and Beneficiary of an Immigrant Visa Petition, based upon a qualifying eight and a half-year, good faith marriage between a United States citizen and a foreign national.  Mr. Abdelwahab is eligible for an immigrant visa on the basis of his eight and a half-year bona fide marriage to a U.S. citizen and approved employment-based immigrant visa petition, which was illegally revoked by CIS's St. Paul District Office.

103)    CIS's denial was in clear error since there was plenty of record evidence showing that their marriage was bona fide. Based upon the evidence before it, CIS had plenty of record evidence to approve the I-130 petition, yet arbitrarily and capriciously chose to rely on only concocted negative information.

104)    The CIS's adverse decision on Mrs. Abdelwahab's I-130 petition is blatantly legally insufficient. The Service failed to meet its burden of proof and impermissibly shifted the burden of proof to Mr. and Mrs. Abdelwahab. The CIS, in its erroneous decision, ignored the record of proceedings, ignored all of the favorable evidence, ignored the affidavits from third parties, and did

32

not give any indication that they adjudicated it in a fair, reasonable, and legal manner.

105)     The adverse decision confirms the CIS was following its pattern and practice of knowingly and intentionally ignoring all of the binding precedent decisions of the BIA relating to the issue in this case.

106)     Mr. and Mrs. Abdelwahab have exhausted all administrative remedies available and have determined that no adequate administrative remedies exist.

107)     Pursuant to 8 U.S.C. Section 1255, *et seq.,* 5 U.S.C. Section 555, *et seq.* [the Administrative Procedures Act or "APA"], and the Fifth Amendment to the U.S. Constitution, Mr. and Mrs. Abdelwahab enjoy a clear right to apply to the CIS for lawful permanent resident status and to receive a fair-handed and impartial interview, and an open-minded and objective adjudication.

108)     They also enjoy a right to have federal agencies charged with the responsibility of applying regulations that affect their applications to do so in an even-handed manner, without discrimination or prejudice. Thus, the BIA erred when it summarily dismissed the appeal of the I-130, claiming that there were no reasons in support of the appeal. Even the DHS itself moved the BIA to reopen the proceedings because undersigned counsel had indeed submitted pages of legal analysis in support of the appeal. The BIA's summary dismissal and intractable position is a classic example of placing form over substance.

### UNLAWFUL REVOCATION OF I-140 IMMIGRANT VISA APPROVAL

109)     DHS engaged in an unlawful after-the-fact revocation of the Form I-140, Immigrant Petition for Alien Worker, upon which Mr. Abdelwahab's's adjustment of status was predicated.

110)     The DHS' conduct in appealing the adjustment of status granted by the Immigration Judge, the unlawful route by which it sought to and revoked the approved I-140, and the bringing of a motion to remand based on that unlawful revocation are all reprehensible.

111)     The Immigration Judge over a period of approximately one and one-half years, granted the DHS approximately four continuances to forward the crucial record in question (Form I-130 Spousal Visa Petition and Form I-485 denied by CIS District Director pursuant to § 204(c)) to the BIA for consideration prior to the merits hearing on the adjustment application, but the Service was utterly lackadaisical in this regard.   The DHS' misbehavior in this matter is not substantially justified.

112)     The Immigration Judge proceeded to rule on the adjustment application based on ample evidence of Mr. Abdelwahab's eligibility.   Instead of letting the decision rest as they should have done, the Service filed an appeal to the BIA. The BIA illegally dismissed the I-130 appeal based on its erroneous conclusion that no reason for appeal was provided.   Even ICE motioned the BIA to reconsider its decision in this regard obviously trying to cover or correct the BIA's blunder, but

34

to no avail. The BIA remained adamant and must now be reversed by this Honorable Court.

113) The basis for the revocation cited in both the Notice of Intent to Deny and the Denial Notice, was the finding by the St. Paul District Office on August 16, 2002, that the I-130 petition for alien relative filed by Alice Abdelwahab on behalf of her husband was based on a fraudulent marriage. The decision on the I-130 was timely appealed to the BIA. The DHS failed to forward this Record of proceeding to the BIA since 2002, despite having four continuances from the Immigration Judge. The Immigration Judge granted Mr. Abdelwahab adjustment of status pursuant to INA §245(a) and (i) based upon the approved I-140 petition filed by Rodham, Inc. D/B/A Sky Café on July 9, 2004. At the master calendar hearing prior to the final calendar hearing, the local office of the DHS quickly issued an unlawful Notice of Intent to revoke the I-140 petition as a means to seek a further continuance from the Judge to forward the Record of Proceedings to the BIA after wasting 1-1/2 years of the Court's time.

114) The Service argued at both the last master calendar hearing and at the final hearing, that the Immigration Judge should grant a further continuance to enable the unlawful revocation of the Form I-140 petition. In turn, Mr. Abdelwahab argued that the CIS St. Paul District Office had no authority to revoke the I-140 petition, as it is not within its province, but instead is the province of the Northern Service Center, which adjudicated and approved said Form I-140 petition. The

35

CIS St. Paul District Office is **not** the designated office for adjudicating I-140 petitions for alien workers pursuant to 8 C.F.R. § 204.5(B), which designates such authority to the regional service centers.  The St. Paul District Office is therefore not the appropriate office for revocation under 8 C.F.R. § 205.2(A).  Additionally, the CIS is prohibited from revoking the I-140 petition pursuant to INA § 205 because the Beneficiary is in the United States.

115)    Finally, the agency has in its possession ample evidence to show that the marriage of Mr. Abdelwahab to Mrs. Abdelwahab is, in fact, bona fide and they additionally failed to forward this record of appeal to the BIA since 2002.  These bad actions and/or inactions of the DHS are unconscionable and should not be rewarded.

116)    Simply put, the revocation was unlawfully procured by the local DHS/CIS office  because it was clearly outside their province, and was designed merely to further frustrate substantial justice in this matter, which was fairly and lawfully dispensed by the Immigration Judge.  The CIS St. Paul District Office's revocation of the I-140 petition at the behest of ICE assistant chief counsel to further his unholy agenda is not valid and must not be condoned.

## X. IRREPARABLE HARMS THE ABDELWAHABS ARE SUFFERING

117)    Mr. and Mrs. Abdelwahab have suffered, are suffering, and will continue to suffer significant and irreparable harm because of Defendants policies, procedures,

acts, failures to act and dirty deeds as described herein.  This harm includes the harms alleged throughout this complaint, and the following:

118)     Because of Defendants' willful and unreasonable denial of the spousal immigrant visa petition, and unlawful revocation of the immigrant worker petition, Mr. and Mrs. Abdelwahab's lives over the past eight and a half years have been "hell on earth" mired with cruel allegations that their relationship is a sham.  As a direct result of the immigrant visa petition denial, the Abdelwahabs missed out on the joys of being worry-free newly-weds.  As long as Defendants continue to improperly deny the immigrant visa petition, the Abdelwahabs will continue to suffer.

119)     Because the Abdelwahabs have waited for over eight and a half years, and will continue to wait, for a fair adjudication of their petition, they have been unable to establish a meaningful life in Minneapolis. Mr. Abdelwahab's status here continues to be indefinite and they are afraid that Mr. Abdelwahab will be deported at a moment's notice, and unable to return.

120)     Because Mr. Abdelwahab is not a legal permanent resident, he is unable to travel outside the United States for fear that there may be a permanent bar to his re-entry into the United States.

121)     In addition, the stress of convincing Defendants that their marriage is bona fide has taken an extreme toll on both their health and their marriage.

#109590

122)     Defendants are forcing Mrs. Alice Abdelwahab to make an excruciating choice: either suffer banishment to a strange culture, treacherous particularly for Americans, in the most chaotic region of the world, or remain in the United States out of fear for her personal safety, shatter her eight and a half-year old marriage and face the catastrophic emotional and financial consequences.

123)     Because Mr. Abdelwahab has not, and will continue not to become a legal permanent resident as quickly as he should have, his naturalization has been delayed.  He has been and will continue to be unable to vote and participate fully in our democracy.

124)     Because Defendants have misinterpreted the INA, applicable regulations and precedent, the Abdelwahabs have suffered and will continue to suffer a myriad of hardships.

125)     Because granting the immigrant visa petition to the Abdelwahabs would cause Defendants to make a colossal U-turn from their unyielding position, the Abdelwahabs now seek this Court's neutral review of the totality of the evidence supporting the *bona fides* of the Abdelwahab marriage.   The Abdelwahabs have no way, other than through this lawsuit, to compel Defendants to approve the immigrant visa petition for Mr.  Abdelwahab.

126)     The Abdelwahabs rights to due process of law and equal protection under the Fifth Amendment to the United States Constitution have been and are being

violated and will continue to be violated by Defendants' failures and policies and practices as described herein.

## XI. CAUSES OF ACTION

### Violation of INA 201(b)

127)     Plaintiffs incorporate paragraphs 1 through 126 as if fully set forth herein.

128)     Defendants' practices, policies, conduct, and failures to act as alleged herein deprive plaintiffs of their rights to have an immigrant visa petition approved pursuant to INA § 201(b).

129)     As a result, plaintiffs have suffered irreparable harm and damages entitling them to relief.

### Violation of the Administrative Procedures Act

130)     Plaintiffs incorporate paragraphs 1 through 129 as if fully set forth herein.

131)     Defendants' practices, policies, conduct, and failures to act as alleged herein deprive plaintiffs of their rights to have an immigrant visa petition approved pursuant to INA § 201(b).

132)     As a result, plaintiffs have suffered irreparable harm and damages entitling them to relief.

### Violation of the Fifth Amendment, Due Process and Equal Protection Clauses (Violation of 42 U.S.C. § 1983: Equal Protection)

133)     Plaintiffs incorporate paragraphs 1 through 132 as if fully set forth herein.

39

134)     Because, for the reasons discussed, the statutory scheme produces arbitrary and capricious decision-making by federal officials as to when an immigrant visa petition will be approved, the scheme also violates the Equal Protection Clause of the Fourteenth Amendment.

135)     Because, for the reasons discussed, Defendants' conduct in revoking the approved I-140 petition deprived Mr. Abdelwahab procedural and substantive due process of law, their actions violates the United States Constitution.

## XII. CLAIMS FOR RELIEF

136)     Defendants willfully and unreasonably refused to approve the Immigrant Visa Petition of Mr. and Mrs. Abdelwahab, thereby depriving Mrs. Abdelwahab of the benefit of having her husband remain with her in the United States as a Lawful Permanent Resident and to allow both of them peace of mind, to which Walid and Alice are entitled under the Immigration and Nationality Act.

137)     Defendants owe the Abdelwahabs the duty to adjudicate fairly and approve their Immigrant Visa Petition, and have unreasonably failed to perform that duty. Plaintiffs have provided all relevant information and facts in each case, particularly showing the *bona fides* of their marriage.

138)     Defendants belatedly and spuriously revoked the I-140 petition upon which Mr. Abdelwahab's adjustment of status grant by the Immigration Judge was predicated.   The BIA inflicted further distress by abdicating its duty to review the

I-130 appeal on the merits and by erroneously vacating the adjustment of status duly granted by the Immigration Judge.

139)     Mr. Abdelwahab has roots in the United States as he has married a United States citizen and has been a productive, hard-working member of society since 1997. He is of high moral character and he is clearly admissible as a lawful permanent resident.

140)     Mr. and Mrs. Abdelwahab have exhausted any administrative remedies that may exist. No other remedy exists for the couple to resolve Defendants' arbitrary and capricious refusal to confer a benefit to which they are entitled under the INA, or to rectify the CIS's unlawful revocation of the approved I-140 immigrant visa petition.

WHEREFORE, Plaintiffs respectfully pray that this Court:

a.  Assume jurisdiction of this cause;

b.  Declare that Defendants' acts and omissions complained of herein violate the Immigration and Nationality Act, the Administrative Procedures Act, and the Due Process and Equal Protection Clause of the Fifth Amendment;

c.  Enter an order that this cause be maintained as an individual action;

d.  Declare that Defendants' refusal to approve the Spousal Immigrant Visa Petition as affirmed by the BIA is unlawful;

#109590

e.  Declare that Defendants' actions in denying the Spousal Immigrant Visa Petition is oppressive and an arbitrary and capricious abuse of power;

f.  Declare that Defendants' action in revoking approval of the I-140 immigrant worker visa petition is oppressive, unlawful and an arbitrary and capricious abuse of power;

g.  Compel Defendants and those acting under them to perform their duty to approve the Immigrant Visa Petition filed by the Abdelwahabs;

h.  Award to Plaintiffs their attorneys' fees and costs under the Equal Access to Justice Act and;

i.  Grant such other relief, as this Court deems just, equitable and proper.


s/Herbert Igbanugo

Dated:  July 12, 2006

HERBERT A. IGBANUGO, Esq.

Attorney Registration No. 191139

Attorney for Plaintiffs
Blackwell Igbanugo P.A.
3601 West 76th Street, Suite 250
Minneapolis, MN 55435
Phone: (952) 646-0400
Fax: (952) 646-0450

#109590